The People of the State of New York ex rel. Henry Hirschberg, as District Attorney of Orange County, Appellant, *v.* Orange County Court et al., Respondents.

(Argued April 14, 1936; decided May 19, 1936.)

*Henry Hirschberg, District Attorney,* for appellant.

*Henry Hunter,* in person, and for Peter Thompson, respondents.

CRANE, Ch. J. The District Attorney of Orange county has sought to obtain a prohibition order to restrain the County Court or the Special County Judge from exercising powers and amending records in a manner unauthorized by law. His application has been denied by the Special Term and the Appellate Division. In our opinion it should have been granted in part at least, as we shall presently demonstrate.

Fifteen years ago, in June, 1921, one Peter Thompson, alias Peter McCarty, with three associates was arraigned in the County Court of Orange county upon an indictment charging him with burglary in the third degree. The records of the court show a conviction upon a plea of guilty to burglary in the third degree, and a sentence of Thompson to eleven months in Westchester County Penitentiary and a fine of one hundred dollars.

In November, 1934, Thompson was again convicted, this time for manslaughter in the second degree, and being a second felony offender under section 1943 of the Penal Law, was sentenced to a term of fifteen years in a State prison.

He was tried in the Supreme Court. After his conviction, and before sentence, the District Attorney, pursuant to said section of the Penal Law, filed an information charging him with being a second felony offender in that he had previously and in 1921 been convicted and sentenced for burglary in the third degree. Thompson remained silent and refused to plead or answer to this information. A jury being impaneled and testimony taken, he was found to be the person previously convicted as alleged in the information. (*People* v. *Gowasky*, 244 N. Y. 451.) What took place at the trial before the jury on the information charging the defendant with the former conviction appears only in so far as Thompson's affidavit alleges that his attempt to challenge and impeach the court records was excluded.

Thompson took no appeal from this last judgment of conviction and made no motion in arrest of judgment. His time to do so has long since expired.

Six months after his sentence, and in June, 1935, Thompson obtained an order from the County Judge of Orange county requiring the District Attorney to show cause why a proceeding should not be had in such court before a jury to determine whether Thompson had pleaded guilty to a felony or a misdemeanor in 1921. Thompson in his petition stated that he had pleaded to unlawful entry, a misdemeanor. Upon the return day, having heard the respective parties, the Special County Judge to whom the matter had been referred, made an order dated July 13, 1935, reading as follows:

" Ordered that the petition of the petitioner herein may be entertained by this Court and that a proceeding may be had before the Court with a jury for the hearing and the determination of the issues raised by the petition and affidavits filed herein, and it is further

" Ordered that the County Clerk of the County of Orange or the properly deputized County Clerk of said County shall, on the 14th day of August, 1935, at 1:00 o'clock in the afternoon of said day at the County Court House in the Village of Goshen, in the presence of the District Attorney of Orange County and the attorney for the petitioner herein, draw from the official jury lists of said County, a list of the names of twenty-five eligible jurors for the empanelment therefrom of twelve jurors for the hearing of such proceeding, and it is further

" Ordered that at said time and place the Court may fix the time and place for the trial of such proceeding before the Court with a jury."

The Special County Judge further ordered the prisoner, although sentenced to a State prison to be kept by the Sheriff in the county jail pending the determination of these proceedings. The judge, however, failed to cite or refer to any statute or authority permitting such a practice and none has been furnished to us.

The present proceeding comes here as the result of an application made by the District Attorney of Orange county for an order of prohibition restraining the Special

County Judge from conducting or attempting to conduct any such proceeding or trial. The Special Term of the Supreme Court refused to grant the order of prohibition and the Appellate Division has affirmed.

The Code of Criminal Procedure establishes the practice in all criminal cases and the authority for the orders and judgments of the courts. Unless we can find there some justification for the above order it does not exist. Chief Judge RUGER said in *People* v. *Hovey* (92 N. Y. 554, 558): " The general object and design of the Code of Criminal Procedure was to collect the various statutes relating to the subject and to furnish a uniform, harmonious and comprehensive system of criminal practice, to apply to and govern all criminal proceedings thereafter instituted in any of the courts of the State."

Mr. Justice McLAUGHLIN (subsequently a member of this court) wrote in *People* v. *Bissert* (71 App. Div. 118, 121; affd., 172 N. Y. 643): " And independent of the construction put upon the Code by the Court of Appeals, the slightest consideration of the various sections of it is sufficient to indicate that it was intended by the Legislature that this Code was to take the place of, and be substituted for, all of the statutes of the State bearing upon the subject, to which end provisions were made for every necessary step to be taken in every criminal case, commencing with the formation of a grand jury, leading up to a trial, conviction, sentence or discharge of a defendant." (See, also, *People* v. *Redmond*, 225 N. Y. 206; *People* v. *Adler*, 140 N. Y. 331, 336; *People ex rel. Jerome* v. *General Sessions*, 185 N. Y. 504, 506.) In reference to motions to set aside indictments WERNER, J., said in *People* v. *Glen* (173 N. Y. 395, 400): " Such matters are now regulated by the provisions of the Code of Criminal Procedure, and however inconvenient, or even oppressive, they may appear to be in specific cases, the courts must apply them, as best they can, for they embody the commands of the law-making power in matters wherein its fiat is supreme and final."

The Code in section 962 provides: "This Code applies to criminal actions, and to all other proceedings in criminal cases which are herein provided for, from the time when it takes effect   *   *   *."

Thus an appeal from a judgment of conviction must be taken within thirty days. (Code Crim. Proc., §§ 517, 520, 521.) The courts have no power to extend the time. A motion for a new trial on newly-discovered evidence must be made within a year. (Code Crim. Proc., § 466.) The courts can afford no relief after the expiration of the time limit, even though the new evidence establishes the defendant's innocence beyond any doubt. The Governor of the State may pardon or commute the sentence in such extreme cases. Where four defendants were convicted of an attempt to commit robbery and only one appealed to this court, which reversed the conviction and dismissed the indictment, the only remedy for those in prison who did not appeal was an application for a pardon. (See *People* v. *Rizzo*, 246 N. Y. 334.)

While we find nothing in the Code relating to the correction of merely clerical mistakes in the court records, yet we believe that any court from its very nature as a court must have inherent power to conform its records to the conceded or apparent facts. Such a power relates, however, to clerical errors, mistakes in recording the true facts and should be exercised with great caution and only where it clearly appears that a mistake has been made. The proceedings which have taken place or the rulings and judgments which in fact have been given cannot thus be amended or changed. The limitations are given by GRAY, J., in *Bohlen* v. *Metropolitan Elev. Ry. Co.* (121 N. Y. 546, 550), which, though a civil case, must, we think, express the rule also for criminal courts. "I am not aware that the courts have ever been denied the inherent power to correct their records, where the correction relates to mistakes, or errors, which may be termed clerical in their nature, or where it is made in order to conform the record to the truth. They should not, after

the final judgment, by amendment, change a ruling upon the law, or alter the decision upon the merits, for, by so doing, the substantial rights of the adverse party would be really affected. But, where the amendment is in the line of the correction of a mistake, or of an omission, obviously due, as in this case, to the trial judge's oversight, the power to make it is a general and incidental one. The question is not one of terms, or of sessions of the court." (See, also, *Clark* v. *Scovill*, 198 N. Y. 279; *Matter of Henderson*, 157 N. Y. 423; *Dalrymple* v. *Williams*, 63 N. Y. 361.)

Applying the above principles to the facts of this case we find the defendant insisting that his plea in 1921 was to a misdemeanor — unlawful entry — not to a felony — burglary, third degree. He is supported by the affidavit of his attorney and also by the fact that his sentence was to the penitentiary for less than a year, while the punishment for burglary, third degree, is imprisonment in a State prison for a term not exceeding five years. Such was the penalty in 1921, as it is today. The County Court had jurisdiction to entertain the motion to correct its records. If it clearly appears to that court that there was a clerical error in recording the plea and that in fact the defendant was sentenced for a misdemeanor, then we can see no reason why the correction should not be made.

Where years have gone by since the sentence, and recollection has become dim, extreme caution should be used in correcting court records. The sentencing judge and the prosecuting attorney should be heard in the matter, if available.

But whether there be a mistake or not is a question for the County Court and the judge thereof. We know of no proceeding whereby a jury is to be summoned to determine whether a judge or a court clerk made a clerical error. The Code of Criminal Procedure provides for no such trial and none exists. A jury trial

is an expense to the taxpayers which must be authorized by Constitution or statute. Crimes must be tried by a jury if the charge be a felony, but the defendant has been tried. The summoning of this jury is to try the judge or the clerk for mistake, or at least to determine whether a clerical error was made by someone in entering the defendant's plea. The law permits no such use of a jury.

The order of the Special Term and that of the Appellate Division should be reversed and the application for an order of prohibition granted to the extent of restraining the respondents from summoning a jury or trying Thompson's application by or before a jury, as provided in the order of the Special County Judge of July 13, 1935, without costs.

LEHMAN, O'BRIEN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Ordered accordingly.