In the Matter of the Voluntary Dissolution of SEAMERLIN OPER-
ATING CO., INC. T. VICTOR SEARING, Respondent; BARTOLO MER-
LINO, as Committee of ANTHONY MERLINO, an Incompetent,
Appellant.

Argued May 20, 1954; decided July 14, 1954.

*Sidney S. Bobbé* and *Louis George Rudd* for appellant. I. The court at Special Term had no power to disregard the findings of the Referee. (*Albany Brass & Iron Co.* v. *Hoffman,* 30 App. Div. 76; *Ward* v. *Bronson,* 126 App. Div. 508; *Beach* v. *Cooke,* 28 N. Y. 508; *McDougall* v. *Shoemaker,* 236 N. Y. 127; *McCleary* v. *McCleary,* 30 Hun 154; *Matter of Cartier* v. *Spooner,* 118 App. Div. 342; *Dean* v. *Driggs,* 82 Hun 561; *Frank* v. *Wolfe,* 166 Misc. 415.) II. There was no deadlock in the board of

directors respecting the management of the affairs of the corporation, and there was therefore no basis for a dissolution. (*Hitch* v. *Hawley,* 132 N. Y. 212; *Matter of Radom & Neidorff, Inc.,* 282 App. Div. 854, 307 N. Y. 1; *Kavanaugh* v. *Kavanaugh Knitting Co.,* 226 N. Y. 185; *Matter of Cantelmo* [*Brewer*], 275 App. Div. 231; *Sterling Industries* v. *Ball Bearing Pen Corp.,* 298 N. Y. 483; *Matter of Binghamton Gen. Elec. Co.,* 143 N. Y. 261; *Matter of Dolgeville Elec. Light Co.,* 160 N. Y. 500.) III. A dissolution would not be beneficial to the appellant as a stockholder. (*Hitch* v. *Hawley,* 132 N. Y. 212; *Kavanaugh* v. *Kavanaugh Knitting Co.,* 226 N. Y. 185; *Matter of Radom & Neidorff, Inc.,* 282 App. Div. 854, 307 N. Y. 1; *Matter of Cantelmo* [*Brewer*], 275 App. Div. 231.) IV. The petition was brought in bad faith. (*Kavanaugh* v. *Kavanaugh Knitting Co.,* 226 N. Y. 185.)

*Bernard Lefkowitz* for respondent. I. No question of law is presented which warrants reversal of the order of the Appellate Division. (*McCleary* v. *McCleary,* 30 Hun 154; *Bantes* v. *Brady,* 8 How. Prac. 216; *Sullivan* v. *McCann,* 124 App. Div. 126; *Wacenske* v. *Merchants Desp. Transp. Co.,* 237 App. Div. 868; *Central Hanover Bank & Trust Co.* v. *Eisner,* 276 N. Y. 121; *Marshall* v. *Meech,* 51 N. Y. 140.) II. Findings of Special Term, based on ample evidence and affirmed by the Appellate Division, are not reviewable by this court. (*Metropolitan Sav. Bank* v. *Tuttle,* 293 N. Y. 26; *Matter of Langslow,* 167 N. Y. 314; *Townsend* v. *Bell,* 167 N. Y. 462; *Harrington* v. *Harrington,* 290 N. Y. 126; *Dennerlein* v. *Martin,* 247 N. Y. 145; *Angelos* v. *Mesevich,* 289 N. Y. 498; *Matter of Plass* v. *Central New England Ry. Co.,* 226 N. Y. 449; *City of New York* v. *Wilson & Co.,* 278 N. Y. 86; *Shepard* v. *Manhattan Ry. Co.,* 169 N. Y. 160.) III. The order of Special Term is discretionary and, therefore, not reviewable by this court unless there is an abuse of discretion. (*Delaware, L. & W. R. R. Co.* v. *Slocum,* 299 N. Y. 496; *April* v. *April,* 272 N. Y. 331; *Mills* v. *Davis,* 53 N. Y. 349; *Matter of Staiger,* 249 N. Y. 229; *Anonymous,* 59 N. Y. 313; *Mongaup Valley Co.* v. *Nyamco Associates,* 247 App. Div. 694; *Livermore* v. *Bainbridge,* 56 N. Y. 72; *Matter of Mellen* v. *Board of Elections of City of N. Y.,* 262 N. Y. 422.) IV. Sufficient evidence to warrant dissolution of the corporation pursuant to section 103 of the Gen-

eral Corporation Law was adduced. (*Matter of Block,* 186 Misc. 945; *Clark* v. *Dodge,* 269 N. Y. 410; *Matter of Superb Diamond Cutting Co.,* 183 Misc. 876; *Matter of Bown Bros.,* 111 Misc. 294; *Matter of Kaufman Circle Express Co.,* 177 Misc. 106.) V. Where the object of a corporation's existence cannot be attained, it is beneficial to the stockholders and creditors that the corporation be dissolved. (*Hitch* v. *Hawley,* 132 N. Y. 212; *Cuppy* v. *Ward,* 187 App. Div. 625.) VI. Searing could not elect a board of directors by himself. Informal meetings of a close corporation's directors are adequate for transacting corporate business. (*Simonson* v. *Helburn,* 198 Misc. 430; *Barnes* v. *All Amer. Investing Co.,* 120 Misc. 706; *Carney* v. *Penn Realty Co.,* 174 App. Div. 86; *Murray* v. *Smith,* 166 App. Div. 528; *Gerard* v. *Empire Square Realty Co.,* 195 App. Div. 244.) VII. The president of a corporation has no power, except in the event of an emergency, to institute suit without the board's consent where the directors are equally divided and a director or his other corporation is the prospective defendant. (*Sterling Industries* v. *Ball Bearing Pen Corp.,* 298 N. Y. 433; *Recamier Mfg. Co.* v. *Seymour,* 15 Daly 245.)

CONWAY, J. By an agreement dated August 22, 1947, T. Victor Searing and Anthony T. Merlino agreed, *inter alia,* (a) to organize the Seamerlin corporation; (b) to execute in the name of, or assign to, said corporation a lease for certain premises at 244–248 West 42nd Street in the city of New York; (c) that each would vote his stock for election of Searing as president, and Merlino as secretary and treasurer of Seamerlin; (d) that each of the parties would vote his stock so that at all times each should elect an equal number of the members of the board of directors; (e) that the stock of each of the parties should not be assigned, sold or transferred or pledged without the prior written consent of the other; (f) that Merlino was to be supervisor of any business which the parties might decide to conduct in the leased premises; (g) that the stock of Seamerlin — when issued — would be indorsed with a statement indicating that it was subject to the conditions and terms of this agreement; and (h) that in case of any dispute between the parties with respect to this agreement or its interpretation, the same should be submitted to arbitration.

Later in August, 1947, the petitioner-respondent T. Victor Searing, and Anthony T. Merlino organized Seamerlin as a real estate operating company with an authorized capital of 100 shares of no par value common stock. Petitioner Searing holds 55 of those shares, and is and has been president of the corporation and one of its directors. Merlino is and has been the secretary and treasurer as well as the other director of the corporation, and holds the remaining 45 shares of its stock. The certificate of incorporation of Seamerlin and its by-laws provide for a board of directors of four, but only two — Searing and Merlino — have been elected.

The respondent Merlino was admitted to Brooklyn State Hospital in August of 1952 and judicially declared incompetent in October of the same year. He is thus now a ward of the court and his brother, his committee, is subject to the court's direction along the lines of reasonable conduct.

The petitioner, Searing, and his wife are part owners of the premises on 42nd Street. Searing himself has been the landlord of these premises since late 1949 or early 1950 by virtue of a sublease to him of the entire building. The premises leased by the Seamerlin company for a period expiring in June, 1957, comprise the ground floor and all of the basement, except the boiler room and the elevator shaft, together with a small portion of the fifth floor of the building on West 42nd Street. In addition, the lease included a small parking lot in the rear of the building. In one front corner portion of the building, facing out on West 42nd Street, there has been a " Milk Bar " owned and operated by Merlin Enterprises, Inc., in which Merlino and Searing had been partners until May, 1949, when Searing sold out his interest to Merlino. That " Milk Bar " was a sublessee of Seamerlin, and occupied a ground floor space of about fourteen by forty-five feet, together with some space in the basement of the building. All of the remainder of the ground floor in the premises leased by Seamerlin was sublet to and occupied by 42nd Street Enterprises, Inc., which used them for the operation of an amusement arcade. The premises occupied by such amusement arcade on the ground floor, therefore, were in the shape of an " L " which ran back from the street, alongside the milk bar, and then back and around the rear of that milk bar. There was no dividing partition between Merlin Enterprises, Inc., and the

amusement arcade, and no demarcation in the premises to indicate the boundary line between those two independent businesses and, consequently, patrons could walk from one of the businesses to the other without any hindrance or indication that there were different owners.

The entire income of the Seamerlin Operating Company, Inc., is derived from the rentals received from its sublessees or statutory tenants, which include 42nd Street Enterprises, Inc., and Merlin Enterprises, Inc. The rent paid by Seamerlin is $44,500 per annum plus certain amounts toward real estate taxes and fuel costs of the building. Its income from rentals, as found by the Referee, is between $60,000 and $65,000 per annum. The Referee further found: " Seamerlin Operating Co., Inc., was organized with an investment of $10,000.00 * * * and the corporation had been earning approximately $15,000.00 a year. Searing, the petitioner, has been getting a salary of $2,750.00 a year, and $5,000.00 a year in dividends * * * and Merlino, until he became an incompetent received a salary of $2,250.00 plus dividends * * *.

" The business of the corporation as is apparent from the above is the management of its sub-tenancies, the active management from its inception has been carried out by T. Victor Searing ".

By petition verified on December 18, 1952, two and one-half months after the adjudication of incompetency, Searing prayed for a dissolution of the Seamerlin corporation on the ground that the directors of that company " * * * are hopelessly deadlocked with respect to the management and conduct of the business of the corporation and will never be able to reach any accord of judgment and opinion with respect to such management and conduct, or even with respect to the election of a Board of Directors ". The petition further alleged (1) that Merlino — the sole other director of Seamerlin — is the president and sole stockholder of Merlin Enterprises, Inc., and that he has used his position as director of Seamerlin to the disadvantage and detriment of that corporation and in order to protect Merlin Enterprises, Inc., which, it was alleged, had frequently defaulted in the payment of its rent, and had allowed its business premises to be operated and maintained in such a fashion and condition (a matter largely of cleanliness and lighting) that 42nd Street

Enterprises, Inc. — which pays annual rentals of approximately $46,900 — is threatened with a loss of customers and income which will compel it to abandon its business on the premises leased from Seamerlin; (2) that Merlino had frequently absented himself when his presence was necessary for the transaction of Seamerlin's business; (3) that he had attempted to borrow money from Seamerlin for personal uses despite the lack of any authorization for such withdrawals in the by-laws of the corporation, and had threatened the petitioner when the latter objected to those withdrawals; (4) that Merlino had refused to have a director's meeting of Seamerlin to discuss the alleged difficulties caused by Merlin Enterprises, Inc.; (5) that on their last meeting in May, 1952, and over the telephone Merlino had used vile and abusive language and had threatened bodily harm to the petitioner; (6) that Merlino had been confined to a hospital for the mentally ill since June, 1952, and had been adjudicated an incompetent and Bartolo Merlino had been appointed his committee on October 1, 1952; and (7) that the committee is likewise unable to agree with the petitioner, and thus the deadlock between the directors will and does continue.

The answer, after denying upon information and belief the pertinent portions of the petition, alleges, in substance, that the dissolution is sought in bad faith in order that Merlino may be ousted from Seamerlin and that Merlin Enterprises, Inc., may be evicted and the space rented to the amusement arcade at a substantial profit.

The case came on before a learned Justice at Special Term, who referred the " issues as to the dissolution of this corporation " to a nonofficial Referee " to hear the facts and make his report to the Court   *   *   *." After hearings which extended over a period of more than two months, the Referee filed his report in which he found, among other findings, that: " The facts do not disclose such discordant interests and irreconcilable difference resulting in a paralyzing failure of management necessary to a dissolution." The Referee further found that " dissolution would not be beneficial to the stockholders " of Seamerlin. He therefore reported that the petition for dissolution should be denied. On the basis of that report and pursuant to section 116 of the General Corporation Law, a motion was made by the committee, and opposed by the petitioner-respond-

ent, for a final order denying dissolution. The learned appointing Justice, however, disagreed with the Referee's finding that the dissolution would not be beneficial to the stockholders. He therefore denied the committee's motion, and entered a final order granting dissolution, writing an opinion in which he said: "The referee has no power to make findings of fact on a reference to merely take testimony nor may conclusions of law be stated by the referee in such a reference (76 C. J. S., sec. 137, p. 259). Where the referee in a reference to hear and report exceeds his authority by reporting conclusions in addition to the facts, the court may reject the former and find the issues on the facts reported (76 C. J. S., sec. 132, p. 258)."

The major issue presented by this appeal is whether Special Term could properly deny the motion of the committee for a final order denying dissolution, in light of the findings of fact made by the Referee that dissolution would not benefit the stockholders, and that there was no " paralyzing failure of management ".

Section 103 of the General Corporation Law, pursuant to which this proceeding was commenced, reads as follows: " Unless otherwise provided in the certificate of incorporation, if a corporation has an even number of directors who are equally divided respecting the management of its affairs, or if the votes of its stockholders are so divided that they cannot elect a board of directors, the holders of one-half of the stock entitled to vote at an election of directors may present a verified petition for dissolution of the corporation as prescribed in this article " (as amd. by L. 1944, ch. 176, § 2; L. 1951, ch. 717, § 3, eff. Sept. 1, 1951).

In the present case there were but two directors on the board of Seamerlin. It should be noted, however, that the Referee found that " * * * the contention that the votes of the stockholders are so divided that they cannot elect a Board of Directors falls in view of the fact that a formal meeting and attempt to elect a full Board of Directors was never called by the president although he had the power to call such a meeting ".

The Special Term Justice had the power to make an order under section 106 of the General Corporation Law if in his discretion a hearing on the *facts* was required under the circum-

stances presented to him. At that time under the *statute* he could hear and determine the *facts* himself or he could send the matter to a referee to hear and determine the *facts*. The statute in plain words says just that. It reads as follows: " § 113. *Hearing.* At the time and place specified in the order, or at the time and place to which the hearing is adjourned, the court, or the referee, must hear the allegations and proofs of the parties, and determine the facts.''

Whether the court hears and determines the facts, or the referee does, made no difference to the Legislature because in either event the legislators in protecting their creature-corporation from extinction through dissolution, made certain that the parties *must* have a Supreme Court Justice determine the *law* question of whether the *facts* as found whether by judge or referee justified dissolution *as a matter of law.* Determination of *facts* the legislators were willing to permit a referee to make, but when it came to a legal determination as to whether the facts found justified dissolution, that was another matter and the legislators required that that be done by a court.

The way the Legislature set this proceeding up makes this so clear. It does not matter whether the court finds the facts or the Referee finds the facts under section 114. They stand equal as the Legislature provided for this proceeding. Thus section 114 reads: " § 114. *Decision.* The decision of the court, or the report of the referee, must be in writing and must be made and filed with all convenient speed * * *.'' Even though the court finds the facts itself, it must file its decision; but even then it may not sign an order based upon its own decision until a motion therefor has been made.

Then we come to section 116, where again the Legislature provided for a motion for a final order to be made whether upon the report of the referee or the decision of the court. In either case, it must be upon motion. This is unusual. Quite clearly this is not a situation where as part of a motion the court uses a referee to hear some facts for the court's enlightenment and as a timesaver. Section 116 in its entirety reads as follows: " § 116. *Application for order.* Where the hearing is before a referee, a motion for a final order must be made to the court, upon notice to each party to the proceedings, who has appeared therein. The notice of motion may be served as prescribed in

the civil practice act and the rules of civil practice for the service of papers upon an attorney. Where the hearing is before the court, a motion for a final order may be made immediately, or at such time and upon such notice, as the court prescribes."

The court made its order pursuant to the authority granted to it by section 106 and the Special Term Justice could not rewrite the statute nor construe his own order as he might wish regardless of the limitations put upon his act by statute. This was an appointment of a referee to hear and determine facts under a special statute regardless of what words Special Term may have used in its order. The General Term laid down that rule in *McCleary* v. *McCleary* (30 Hun 154, LEARNED, P. J.). The pertinent statute, and not the form of the order controls. (*Matter of Cartier* v. *Spooner*, 118 App. Div. 342; *Matter of Ney Co.*, 114 App. Div. 467; *Matter of Ginsburg [Adelson]*, 191 Misc. 188; *Wacenske* v. *Merchants Despatch Transp. Co.*, 237 App. Div. 868.)

In other words, the Special Term Justice could decide whether he would determine the facts or whether he would have a referee pass upon them within the terms of the statutory grant of power and authority in the premises. When he did that and signed an order, as provided in section 113, that was a judicial act and he could not later review that act, change his mind and then determine that he was going to be the fact-finder. He was *functus officio* as to that judicial act and determination. Review of his act and of the findings of the Referee must be by the Appellate Division. (*Matter of Kling*, 60 App. Div. 512; and see annotations in 10 A. L. R. 526; 67 A. L. R. 828; 126 A. L. R. 956; *People ex rel. Hirschberg* v. *Orange Co. Ct.*, 271 N. Y. 151.)

We may not construe the act of the Special Term Justice appointing the Referee as an ordinary appointment to hear and report when the legislative authority for the appointment was one to hear and determine facts under section 113. The appointment of the Referee was a judicial act provided for with limitations by the Legislature. The Referee, if one were appointed, was to have certain functions and powers. So was the court, and each was to function accordingly. Since that is so, then the review of the facts as found by the Referee and of the law as pronounced by the court upon those facts is for the Appellate

Division, the court of review for Special Term's judicial actions. (*Herpe* v. *Herpe*, 225 N. Y. 323; see, also, *Ring & Son* v. *Winola Worsted Yarn Co.*, 228 N. Y. 127; *Corr* v. *Hoffman*, 256 N. Y. 254; *Schenectady Trust Co.* v. *Emmons*, 290 N. Y. 225.)

There were three questions of fact presented in the present case: (1) were the directors of Seamerlin unable to agree on a matter of corporate management; (2) would dissolution be non-injurious to the public, and (3) would dissolution be beneficial to the shareholders (see *Matter of Radom & Neidorff, Inc.*, 307 N. Y. 1; *Matter of Cantelmo* [*Brewer*], 275 App. Div. 231). All three questions must be answered in the affirmative before a dissolution will be warranted or may be ordered. (See General Corporation Law, §§ 103, 117.) Two of them were decided adversely to petitioner by the Referee.

It is unnecessary at this time, however, to consider the first two questions which the Referee was called upon to decide, inasmuch as there was error of law on the part of both Special Term and the Appellate Division with regard to the third question — whether or not dissolution would be beneficial to the shareholders.

On that issue of fact the Referee wrote the following: " The business of the corporation has been carried on. Even after Merlino became incompetent the business was carried on by Searing, as agent. Dissolution would involve losing the profits of the sub-leases since a sale of the leases might bring in little, if anything. On the whole, therefore, *dissolution would not be beneficial to the stockholders.*" (Emphasis supplied.)

There was, therefore, an express finding that the incompetent and the petitioner would *not* be benefited by dissolution of Seamerlin. The Special Term Justice, however, wrote in his opinion that: " * * * it is the considered opinion and judgment of the court that it is in the best interests of the corporation, the stockholders and the creditors that such dissolution be decreed."

Whether or not the stockholders would be benefited by dissolution was, as stated above, a question of fact to be determined by the Referee upon evidence before him. There was evidence from which the Referee could make a finding that the stockholders would not be benefited, viz., that the corporation was making a profit and that a sale of Seamerlin's lease at public auction would probably not produce much cash, if any. Real

estate appraisers were called by petitioner and respondent to testify to what the lease of Seamerlin " would bring in if the leases were offered for sale at public auction in the event of dissolution ". The respondent's appraiser testified " that only a man who knew nothing about real estate would buy the lease ". The petitioner's appraiser fixed a possible figure of between $5,000 and $10,000 net profit but said that the purchaser would be a speculator, and not an investor, who would have to deposit $10,000 as security. Since there was this evidence upon which the Referee could properly make a finding that dissolution would not benefit the stockholders, Special Term could not reverse that finding as a matter of law; nor could that court review it as a question of fact because this was properly a reference to hear and determine issues of fact. The Referee's finding of nonbeneficial results of dissolution to shareholders was conclusive upon Special Term, and the *only* order that that court could properly make in such a case was a final order denying dissolution as a matter of law in view of that finding of fact by the Referee. A reversal upon the facts was for the Appellate Division if there was to be such a reversal.

Special Term, however, reversed that negative finding of fact by the Referee and substituted therefor a new positive one, viz., that dissolution would benefit the shareholders. Upon that new finding of fact the Special Term ordered dissolution. The Appellate Division has affirmed the order of Special Term, without opinion. Both courts below, therefore,were incorrect inasmuch as one of the essential elements for a dissolution under section 103 of the General Corporation Law — i.e., a finding that the stockholders would be benefited thereby (General Corporation Law, § 117) — was lacking since there was no power in the Special Term to make that finding in the face of a contrary finding by the Referee. The Appellate Division should have remitted the matter to Special Term for the entry of an appropriate order. After that had been done an appeal to the Appellate Division on the facts would have been proper.

The order of the Appellate Division and that of Special Term should be reversed, with costs in all courts, and the matter remitted to Special Term for further proceedings not inconsistent with this opinion.

DESMOND, J. (dissenting). We cannot agree to this decision since it means no less than this: that, in corporation dissolution proceedings, the court is forbidden, as in no other special proceeding or motion practice, to use the services of a referee to take and report the facts only, without making any binding determination thereon. Even if the various provisions of article 9 of the General Corporation Law can, possibly, be read to require that all references in such proceedings be to hear and determine, that is not the only possible reading of those statutes. We should not so read them as to produce a result the Legislature could not reasonably have intended.

The order should be affirmed, with costs.

LEWIS, Ch. J., DYE and VAN VOORHIS, JJ., concur with CONWAY, J.; DESMOND, J., dissents in an opinion in which FULD and FROESSEL, JJ., concur.

Orders reversed, etc.