Titone, J.
(dissenting). This appeal challenging the compulsory arbitration provisions of the State’s Lemon Law (General Business Law § 198-a [k]) raises disturbing questions about when and under what circumstances the Legislature may assign the task of adjudicating civil claims, which is ordinarily reserved to the sovereign, to a private dispute-resolution specialist. Because I cannot agree with the manner in which the majority has resolved this weighty question, I dissent.
At the outset, it is important to identify precisely what the Legislature has done by enacting the compulsory arbitration provisions that are the subject of this appeal (General Business Law § 198-a [k]). First, it has singled out a class of commercial disputes, i.e., consumer breach of warranty claims arising out of automobile sales, and established a mandatory remedy of replacement or repair, provided certain simple procedural steps are taken (General Business Law § 198-a [b], [c]; see, Givens, Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law § 198-a, at 311-315). Next, it has substituted for traditional judicial adjudica *189 tion a system of compulsory dispute resolution by private arbitrators, who would act under administrative guidelines established by the Attorney-General (General Business Law § 198-a [k]). Significantly, with the exception of a new statutory presumption, the features of a claim under the Lemon Law, and the related defenses, closely resemble those of a conventional breach of warranty claim (see, General Business Law § 198-a [c] [3]; [d]).
Thus, although it is fair to conclude, as the majority has done, that the Lemon Law has technically established what may be characterized as a new, legislatively created cause of action (majority opn, at 184), it cannot be denied that the gist of the legislative effort was to remove this class of disputes from the courts and to place the responsibility for their resolution in the hands of undoubtedly more efficient, and less costly, private dispute-resolution professionals, acting under the supervision of State administrators. As one commentator has observed this obviously well-intended consumer-oriented legislation rests on the premise that "an entirely new compulsory judicial structure can be erected by an elected official to solve certain types of disputes” (Givens, op. cit., at 316). Whether this "breathtaking concept” (id.) passes constitutional muster is a troubling question worthy of close scrutiny.
It has been held that the legislative powers possessed by the sovereign State cannot be delegated to a private entity (Matter of Fink v Cole, 302 NY 216; Builders' Council v City of Yonkers, 106 Misc 2d 700, 703, affd 79 AD2d 696). It would also seem obvious that the inherently coercive authority possessed by the judicial branch of government also cannot be delegated to private entities, who are not accountable to the public either through the elective process or the strictures of the Public Officers Law. Indeed, our citizens’ respect for and willingness to submit to the notion of peaceful dispute resolution depends, in large measure, on the fact that in our system the process is conducted not by other private citizens, but rather by public officials who act, at least theoretically, on behalf of the body politic as a whole. Since one of the primary functions of government is to keep the peace by resolving private disputes among citizens, I would reject the notion that this function can simply be legislatively delegated to private dispute-resolution specialists with no public accountability. Yet, that is precisely what the Legislature has done in enacting General Business Law § 198-a (k).
*190 The arbitrators who have been assigned by the Attorney-General, pursuant to the statute, to adjudicate Lemon Law disputes — members of the American Arbitration Association— are private citizens who are not elected, removable or otherwise accountable as public officers. They are not even classifiable as "quasi-governmental” authorities. Indeed, the majority acknowledges as much when it observes that the American Arbitration Association is not a " 'department, board, bureau, commission, division, office, council, committee or officer of the state * * *’ and therefore is not an 'agency’ within the meaning of the State Administrative Procedure Act” (majority opn, at 188, quoting State Administrative Procedure Act § 102 [1]). Parenthetically, the majority’s analysis on this point highlights the difficulty of permitting delegation of what are ordinarily sovereign functions to private entities: important regulations designed to promote public accountability, such as the State Administrative Procedure Act, are not available.
Furthermore, there can be little doubt that the function General Business Law § 198-a (k) assigns to private arbitrators is judicial in nature. Under the statute, manufacturers are compelled to submit to binding arbitration breach of warranty disputes that differ very little from those that formerly would have been adjudicated in the courts. Arbitrators are empowered to take evidence (13 NYCRR 300.13), to subpoena witnesses and documents (300.10 [e]), and make binding determinations of fact and law (300.17 [i]). These traits are unique characteristics of the sovereign judicial function (see, Hecht v Monaghan, 307 NY 461, 469 [" '(a) judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist’ ”]; Matter of Metz v Maddox, 189 NY 460, 472 ["(t)he essence of a judicial proceeding is that it decides something and that its decision is conclusive on the parties”]; Matter of Nash v Brooks, 251 App Div 616, 618 [" '(t)o adjudicate upon, and protect the rights and interests of individual citizens, and to that end to construe and apply the laws, is the peculiar province of the judicial department’ ”]).
Contrary to the conclusion of the majority (majority opn, at 185), the judicially approved, long-standing practice of compulsory references to private dispute intermediaries does not furnish legitimizing precedent for what the Legislature has done here. New York has traditionally recognized two types of Referees: Referees "to hear and report” and Referees "to hear and determine” (see, CPLR 4301; Judiciary Law former § 115 *191 [repealed by L 1962, ch 704]; § 117; Family Ct Act § 439; see also, NY Const, art VI, § 25). The former function merely "as an aid to the court” (Matter of 3260 Perry Ave. Realty Corp. [De Burr], 285 App Div 71; accord, Bannon v Bannon, 270 NY 484, 492), while the latter have been permitted even to direct entry of the final appealable judgment (see, e.g., Schuyler v Smith, 51 NY 309, 317). Even in the case of Referees "to hear and determine,” however, there is some oversight by the judiciary in the form of an initial, individualized determination by a publicly accountable Judge that the matter is an appropriate one for a binding reference (see, Matter of Seamerlin Operating Co. [Searing — Merlino], 307 NY 407; Bannon v Bannon, supra).[1] Indeed, the constitutionality of a statute authorizing references "to hear and determine” was upheld, in part, because of the existence of that initial judicial participation (Matter of Brock, 245 App Div 5, 10; see generally, Decker v Canzoneri, 256 App Div 68). That saving feature — the initial participation in the litigation of a publicly accountable judicial or quasi-judicial officer — is not present here.
Nor is the problem posed by this delegation of a sovereign function to a private entity answered by the availability of the purportedly heightened standards of judicial review that are applicable to awards resulting from compulsory, as distinguished from voluntary, arbitration. In Mount St. Mary’s Hosp. v Catherwood (26 NY2d 493), the court held that, in addition to the extremely limited review ordinarily afforded to other arbitration awards, compulsory arbitration awards must be tested under the somewhat more exacting CPLR article 78 standards ordinarily applied to administrative agency determinations, because those standards are necessary to ensure that the litigant receives at least the minimum consideration that constitutional due process requires. Due process is implicated, of course, because the individual has been required by government to submit to the authority of an arbitrator. While the use of such heightened review may resolve the due process problem posed by compulsory arbitration laws, however, it does not satisfactorily address the entirely separate problem— not addressed in Mount St. Mary’s — arising from the delega *192 tion of the State’s coercive judicial powers to a private entity. Indeed, while the private due process interests of the litigants may be satisfied by the level of review afforded under CPLR article 78, one may well question whether the public’s interest in primary decision making by accountable officials may be satisfied by that mechanism.
Moreover, the majority’s reliance on the Mount St. Mary’s standard for judicial review of compulsory arbitration awards is open to serious question. The Mount St. Mary’s court noted that "if, indeed, the Legislature purported to provide ad hoc arbitration tribunals to resolve * * * disputes without limitation to rules of law, it would have acted unconstitutionally”, but went on to assert that the constitutional problem is ameliorated by the existence of "standards to guide the delegate body” and adequate judicial oversight "to assure that there is a reasonable basis for the action by [it] in compliance with [those] standards.” (26 NY2d, at 505, supra [emphasis supplied].) Although Mount St. Mary’s articulated a heightened standard analogous to that applied in article 78 proceedings in order to satisfy constitutional concerns, that standard has noticeably been eroded by this court’s recent applications of the standard in the context of no-fault compulsory arbitration appeals.
In Matter of Smith (Firemen’s Ins. Co.) (55 NY2d 224, 232), the court summarized the modern standard of compulsory arbitration review emerging from its recent holdings (Cohn v Royal Globe Ins. Co., 49 NY2d 942; Matter of Furstenberg [Aetna Cas. & Sur. Co.], 49 NY2d 757; Matter of Garcia v Federal Ins. Co., 46 NY2d 1040; see also, Matter of McKenna v County of Nassau Off. of County Attorney, 75 AD2d 815, affd 51 NY2d 902) as follows: "[W]e generally will not vacate an arbitrator’s award where the error claimed is the incorrect application of a rule of substantive law * * * unless it is so 'irrational as to require vacatur’ ”. Even apart from its apparent circularity, this standard is substantially less exacting than that applied in the review of the legal conclusions of administrative agencies (see, e.g., Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451). Thus, a legitimate and well-founded concern exists about what may be characterized as the excessive judicial deference to the arbitrator’s legal, as well as factual, conclusions that the post Mount St. Mary’s case law seems to require. Indeed, this court’s assertion in Smith that the recent cases all but preclude judicial review for error of law may well bring the current law on the subject into direct *193 conflict with the Mount St. Mary’s court’s warning against the legislative establishment of "aid hoc arbitration tribunals to resolve * * * disputes without limitation to the rules of law” (26 NY2d, at 505, supra [emphasis supplied]).[2]
On a more fundamental level, I have grave doubts as to whether this legislation is consistent with the basic tenets of the separation of powers doctrine. I agree with the majority (majority opn, at 183-185) that General Business Law § 198-a (k) does not, as a technical matter, effect an impermissible reduction in the Supreme Court’s general original jurisdiction (NY Const, art VI, § 7), since it merely furnishes potential suitors with an alternative forum in which to pursue their claims. However, when examined from a broader, practical perspective, it is apparent that the Legislature has sought to accomplish precisely what the separation of powers doctrine forbids.
While the immediate purpose of the Lemon Law’s compulsory arbitration provisions may have been to remedy the defects in the manufacturers’ informal dispute-resolution systems, which were adopted in accordance with the Federal Magnuson-Moss Warranty Act and related Federal Trade Commission regulations (15 USC §§ 2310-2312; 16 CFR part 703; see, General Business Law § 198-a [g]), the overriding motivation behind the legislation was the Legislature’s dissatisfaction with the cumbersome and often too slow and too expensive judicial mechanisms for resolving this type of dispute (see, Attorney-General’s Mem to Governor Re: S 8342-A, Bill Jacket, L 1986, ch 799; see also, Givens, op cit., at 311-316). Accordingly, the Legislature seized upon the solution of simply bypassing the judiciary by authorizing use of private arbitrators and procedures prescribed by the Attorney-General.
The implications of this court’s approval of such a solution are no less than monumental. If the Legislature may autho *194 rize disputants to bypass the judiciary and choose an adjudicative forum supervised by the executive branch each time it is dissatisfied with the manner in which the judicial branch is handling a particular class of disputes, there would be little left to insulate the judiciary from legislative incursion. In this regard, it is worth emphasizing that the compulsory arbitration mechanism established by the Legislature in connection with the no-fault insurance program is not analogous to the compulsory arbitration system created by the Lemon Law. The controversial no-fault insurance legislation entirely abolished a class of common-law tort claims and replaced it with what resembled an administrative claim system unlike anything that had existed before in the area of vehicular negligence litigation (see, Montgomery v Daniels, 38 NY2d 41). Here, in contrast, the Legislature took what was formerly a traditional, litigable breach of warranty cause of action and, after making certain minor and incidental alterations, made that virtually unchanged cause of action subject to arbitration, rather than judicial resolution, at the behest of the claimant. Thus, unlike the broad-based, multifaceted No-Fault Law, which was aimed primarily at eliminating a particular class of tort actions, this legislation was intended to preserve a class of existing legislatively favored causes of action while at the same time circumventing the judicial system in favor of a private arbitral forum. It seems to me that such legislation squarely contravenes the separation of powers doctrine upon which our system of governmental checks and balances is built and that it ought not be tolerated.
While the intention of the Lemon Law’s drafters to facilitate the vindication of consumer claims was, no doubt, commendable, the method they chose — bypassing, rather than improving, the judicial process — represents an unacceptable incursion on the province of the judiciary. As Justice Brandéis observed in a different context: "Experience should teach us to be most on our guard to protect liberty when the Government’s purposes are beneficent. * * * The greatest dangers to liberty lurk in insidious encroachment by men of * * * well-meaning [intention]” (Olmstead v United States, 277 US 438, 479 [Brandeis, J., dissenting]). Although I am in complete accord with the goal of improving the mechanisms for resolving just consumer claims, I believe that the mechanism the Legislature has chosen is simply too disruptive of the delicate balance governing the relationship among the various *195 branches of government. For that reason, I respectfully dissent.
Chief Judge Wachtler and Judges Kaye, Alexander, Hancock, Jr., and Bellacosa concur with Judge Simons; Judge Titone dissents and votes to reverse in a separate opinion.
Order affirmed, with costs.

. In Glass v Thompson (51 AD2d 69), where the binding references occurred by virtue of administrative assignment rather than individualized judicial determination, the references were made to individuals who were at least public officers, albeit not constitutionally elected or appointed Judges. Furthermore, this court has not necessarily approved the practice discussed in that case (see, Babigian v Wachtler, 69 NY2d 1012,1014).

. The majority’s suggestion (at 186) that "Lemon Law arbitrators * * * are not given broad powers to interpret substantive case law” is puzzling. Although their primary role is to resolve factual disagreements, the disputes placed before them will inevitably give rise to some substantive and legal questions. At the very least, the arbitrators will be called upon to decide how to apply the statutory and regulatory procedures and to construe the statute and regulations in the event of a perceived ambiguity. Moreover, application of the substantive concepts related to this "new” cause of action, such as "substantial impairment ofj the value of the motor vehicle” (General Business Law § 198-a [c] [1]), unquestionably requires a measure of legal analysis.