SARAH F. MILLER, in equity,

*vs.*

GEORGE B. KENNISTON, Judge in Insolvency.

Lincoln.　Opinion August 17, 1894.

*Insolvency.　Dissolution of Attachment.　Equity.*

An attaching creditor will not be allowed to maintain a bill in equity to defeat proceedings in insolvency, properly begun, within four months of the attachment of the debtor's property, when the purpose will defeat an equitable division of an insolvent's estate.

ON REPORT.

The case appears in the opinion.

*C. E. and A. S. Littlefield,* for plaintiff.

*George B. Sawyer,* for defendant.

SITTING: PETERS, C. J., WALTON, EMERY, FOSTER, HASKELL, WHITEHOUSE, JJ.

EMERY, J.　The plaintiff, in an action at law, in Lincoln county, against the Waldoboro' Packing Company claims to have effectually attached the property of the defendant company. This company was indebted to her and to the Medomak National Bank and others.　Pending the action at law, and within four months after the attachment, a petition in the usual form purporting to be by the Medomak National Bank as creditor and signed by its president was filed in the Court of Insolvency, for Lincoln county, praying the court to adjudge the Waldoboro' Packing Company insolvent.　The plaintiff, thereupon, moved in the same court for the dismissal of the petition upon the ground that it was never authorized nor ratified by the Medomak National Bank, in whose name it purported to be made.　The Court of Insolvency overruled her motion to dismiss, and proceeded upon the petition to issue the usual warrant, and call the first meeting of creditors.　The plaintiff, thereupon, brought this bill in equity against the judge of the Court of Insolvency

to compel him to dismiss the petition and discontinue all proceedings under it.

Her argument is, that she has a valid attachment which will be dissolved by the insolvency proceedings, if they are allowed to go on; that these proceedings were never properly begun, and should be dismissed for the reason that the party purporting to be the petitioning creditor never authorized nor ratified the petition; that she has no remedy by appeal, none being authorized by statute in such cases; that she has no remedy at law, and that, therefore, she is entitled to the interposition of the court in equity to save her attachment.

The plaintiff's plain purpose is to obtain not an equality with, but an advantage over, the other creditors of the insolvent company. Such a purpose is abhorrent to the very nature of equity, which was born of the principle of equality. According to Sir Henry Maine (Anc. Law, 55, 56), the primal meaning of the term *equitas*, in the Roman law, was either the idea of equal, proportionate distribution, or the idea of levelling in the sense of removing inequalities. The term equity in English and American law is derived from the Roman *equitas*, and in the long history of equity jurisprudence, from the Roman Prætors to this day, its original meaning has never been obscured. The maxim, "equality is equity," has long been familiar as a potent principle, and has lost none of its force.

Equity jurisdiction is often and repeatedly exercised to secure equality, but is never exercised to produce or even protect, an inequality among creditors. This court was granted this jurisdiction in cases of insolvency to facilitate the proportionate distribution of the insolvent's assets, not to prevent it.

The plaintiff's vantage ground, if such she occupy, was won with weapons drawn from the armory of the strict law. For its defense she must rely upon those same weapons. Equity's armory is not open to her.

                                        *Bill dismissed with costs.*