No. 17,466.

MARY L. SAVAGEAU, ET AL. *v.* J. & R. A. SAVAGEAU, INCORPORATED, ET AL.
(285 P. [2d] 810)

Decided July 5, 1955.

Mr. WILLIAM E. DOYLE, MARJORIE W. EPPING, for plaintiffs in error.

Messrs. PHELPS & WITTLESHOFER, Messrs. HODGES, SILVERSTEIN, HODGES & HARRINGTON, for defendants in error.

*En Banc.*

MR. JUSTICE CLARK delivered the opinion of the Court.

PLAINTIFFS commenced this action in the district court, the purpose being to procure judgment ordering the dissolution of the defendant corporation, J. & R. A. Savageau, Incorporated, and distribution of its assets, or in the alternative, that said corporation be declared a partnership and its assets partitioned. In the prayer of their

complaint they first asked that the court appoint a receiver to manage and operate the properties of the corporation pending final determination of the litigation, and that upon entry of decree therein said receiver proceed to dissolution of said corporation and make distribution of all assets thereof. Some six weeks after the filing of plaintiffs' complaint they caused to be prepared and filed a separate document entitled "Application for Receiver," wherein they refer to their complaint seeking dissolution of said corporation and allege that, notwithstanding the desire of plaintiffs for a dissolution of said corporation, the defendant Raymond D. Savageau continues to act as manager and president of the corporation and to exercise all power of such offices, taking a salary for his service in that connection; that the property of said corporation and its rents, issues and profits "are in danger of being materially injured or impaired," and "that the matter is one of high emergency."

Defendant corporation, appearing separately, formally moved to dismiss the application for appointment of receiver upon the grounds and for the reasons that: (1) Said application does not state facts or a claim sufficient to authorize the appointment of a receiver; and (2) that the court had no jurisdiction or power to appoint such receiver. In addition to such motion, the defendant corporation, again appearing separately, filed rather extensive objections to the application for receiver, being somewhat by way of an answer to said application, and setting forth various grounds why said receiver should not be appointed. The remaining defendants, appearing together, but separate from the defendant corporation, likewise filed objections to the application for appointment of a receiver by adopting the objections prepared and filed on behalf of defendant corporation.

The trial court, after having devoted two days to the hearing of arguments pertaining to said motion and objections, following a short period when he considered the same under advisement, granted the motion of de-

fendant corporation to dismiss plaintiffs' application for receiver, denied said application, and refused to appoint a receiver.

Thereupon plaintiffs' counsel requested, and was granted, leave by the court to file an amended application for receiver, which substantially reiterates the allegations of their first application and adds thereto that defendants Raymond D. Savageau, Celeste Savageau and William Bradley Freeman are in possession and control of defendant corporation and its property by reason of the fact "that they were in such possession and control when the dissensions and conflicts which are hereinafter described started," and that they are able to continue in control because of stockholder deadlock, which does not permit their being voted out; that the three persons above named are directors of defendant corporation, as also is the plaintiff Mary Savageau, the corporate articles providing for four directors; that the three to one majority on the board of directors permits the defendants to control said corporation, and that they threaten to perpetuate themselves in office and "freeze out the plaintiff group from all active participation in the defendant corporation." Then follows certain comparatively minor allegations based upon information and belief. The amended application then concludes with several general statements to the effect that defendants have caused attorneys' fees to be paid from the corporation assets; that said corporation is not being conducted in accordance with the laws of Colorado; that Robert D. Savageau, "who claims to be president and manager," exercises full and complete dominion over the corporate affairs; that it is impossible to elect other directors because of the deadlock among the stockholders; that the corporate objects have failed because it is impossible to conduct the corporation in a spirit of cooperation necessary in such a closely held association; and that the dissensions and conflict between the two groups are so deep seated that no relief may be had other than through the ap-

pointment of a receiver "pending the determination of the issues in this case."

To this amended application for receiver defendant corporation filed its motion to dismiss and its separate answer, and likewise the other defendants collectively, although separately from defendant corporation, moved to dismiss, and objected to said application by adopting pleadings filed on behalf of the corporation. These matters coming before the court, it adhered to its former ruling granting defendants' motions, denying plaintiffs' application for receiver and refusing to appoint a receiver. To review these orders and rulings of the court, plaintiffs have caused a writ of error to be issued from this Court.

On behalf of plaintiffs it is contended, according to counsel's summary of argument, that the trial court committed error in dismissing plaintiffs' application and amended application for a receiver for the reasons that: (A) The trial court misconstrued the case of *People ex rel. Daniels v. District Court,* 33 Colo. 293, 80 Pac. 908, and having misinterpreted it, should not have followed it; (B) The trial court's failure to follow the decision in *Eureka Coal Co. v. McGowan,* 72 Colo. 402, 212 Pac. 521; (C) That dissension and dissatisfaction among shareholders, together with oppression by one group holding 50% of the stock at the hands of the remaining shareholders constitute a valid ground for the appointment of a receiver; (D) The failure of corporate purposes and continued failure and inability to comply with corporate laws of the state justify the appointment of a receiver; and (E) That the appointment of a receiver pendente lite and a decree dissolving a corporation are distinct questions and that such receiver should be appointed even though following trial upon the merits, dissolution is found to be inappropriate. Since all five points relate to the one general question of whether the trial court was in error in dismissing plaintiffs' application for a receiver, we will undertake to cover all of them in a

general discussion relating to the alleged error, since to treat each of them separately, would unduly lengthen this opinion.

It is true that the trial court, in denying plaintiffs' first application, relies strongly upon the case of *People ex rel. Daniels v. District Court, supra,* and quotes therefrom as follows:

"It is also the rule in this state, as generally in this country, that in the absence of a permissive statute, courts of equity have no power to dissolve a going business corporation, and to that end appoint a receiver for the sequestration of the corporate property."

Later on in his comments, the trial court said:

"The ultimate relief sought by the plaintiffs in the instant case, to this court at least, seem to be virtually identical with the relief sought in People ex rel. Daniels vs. District Court, that is, dissolution of a solvent corporation, with the further request that the court appoint a receiver to handle the affairs of the corporation until such time as it was officially dissolved. However, in the case of People ex rel. Daniels vs. District Court, the pleadings went much further than do the pleadings in the instant case in that in the former there were allegations of fraud, mismanagement and ultra vires acts. It appears to this court that all evidence which could properly be received by this court upon any hearing in connection with the plaintiffs' 'Application for Receiver,' even including evidence in support of the allegations as found in the complaint, would still leave the court squarely within the rule ennunciated in People ex rel. Daniels vs. District Court, that is, the court has no authority or jurisdiction to appoint a receiver."

The trial court concluded that its jurisdiction to appoint a receiver depended largely upon the ultimate relief sought, and that when such relief is dissolution of the corporation "then the power to appoint does not exist."

The trial court also suggests that if it is to be the rule

in this jurisdiction, "that a court of equity may dissolve a going solvent private business or corporation and in connection therewith appoint a receiver," then the Supreme Court should overrule the Daniels case, calling attention to the fact that it has several times been approved, sometimes distinguished, but never overruled.

There is no question but that a court, otherwise qualified, in a proper case has the power to decree the dissolution of a corporation and the opinion in the Daniels case so indicates. It declares the general rule that in the absence of a permissive statute, no such power exists with reference to a going domestic business corporation, at least in the absence of a clear showing of facts creating an exception to the general rule, which was not true in that case. The doctrine announced in the Daniels case has met with favor in the case of *Rossi v. Colorado Pulp and Paper Co.*, 88 Colo. 461, 519, 299 Pac. 19, and was recently specifically approved in the case of *Hepner v. Miller*, 130 Colo. 243, 274 P. (2d) 818, wherein the existing situation of the parties was almost identical with that present in the instant case. We again approve that general rule.

There are doubtless instances where a court of equity might justifiably intervene to order a receivership for the protection and preservation of property, or property values, under corporate ownership, but in such cases there must exist exceptional facts and circumstances removing such case from the limitations of the general rule. Here we pause to preface our further remarks by recalling certain fundamental principles pertaining to receivership. Courts many times have characterized receivership as a drastic, extraordinary remedy. It is a powerful weapon when pressed into service, and should be used sparingly and only where clearly necessary. Many cases so holding might be cited, but this principle is so universally recognized that we deem citation unnecessary. The usual and ordinary functions of a receiver is to collect and preserve assets and to maintain

the status quo pending a determination of the issues being litigated. It is not a finality within itself, but is only a means to an end that the court might be enabled to do equal justice to all parties before it. In cases such as the one now before us it should be granted only for the prevention of manifest wrong or injury, and as a matter of last resort.

Were the practice adopted ordering receivership in all cases where a stockholder or a group of stockholders felt abused, neglected or discriminated against, in protecting the rights of a few disgruntled stockholders presenting such grievances, imaginative or real, receiverships doubtless would become so common as to seriously impair, if not destroy, all corporate activity. Courts would be called upon through equity procedures to hamper and nullify the efforts of the many, which, of course, manifestly would be inequitable.

There exists a lack of uniformity in the decisions of courts of last resort in the several jurisdictions as to exactly when and under what circumstances a court of equity should lend its aid through its strong arm of receivership at the solicitation of stockholders who may feel that their rights are being invaded. It is impossible to reconcile all of these conflicting decisions, but bearing in mind the foregoing review, it leads us to what we believe the rule should be — and which we feel the courts have tried to define it to be — as an appropriate and proper line of demarcation beyond which equity should not set into effect its drastic weapon of receivership, lest in undertaking to relieve one of distress, disaster would result to many who were innocent of any wrong. Where active fraud and deceit appear, where the corporation is insolvent, or for some reason or other it has ceased to carry on its authorized functions, and because thereof its property and assets are in danger of being dissipated or lost; or where, because of some dispute and dissension, serious loss results to the corporation as an entity as distinguished from its stockholders as individuals, it

might well be said that probable grounds for the granting of receivership are proper. Illustrative of the last thought expressed might be an instance where the board of directors being evenly divided are in an open dispute and cannot and will not agree upon any policy, thereby shutting down corporate activity resulting in injury to its assets and forestalling its continued financial stability. Where, however, the corporation is an active going concern with a competent board of directors who plan its operation and whose executive officers, under direction of the board, engage themselves in pursuing such plan, equity, in good conscience and fairness, may not intrude with its receivership to thwart such operation upon the contention made on behalf of some of the shareholders that they have a better plan or could operate more profitably than the present board is able to do. Such controversy may be adjusted by other means less severe. Quite conceivably a receivership under such circumstances could do much more harm than good. *Buchhalter v. Myers*, 85 Colo. 419, 276 Pac. 972.

In the instant case plaintiffs' counsel insist that this Court be confined in its review to the contents of their application for appointment of receivership, and to this suggestion we will undertake to adhere. There is a question whether we should even take into account the allegations of the complaint, but will at least partially do so since it is attempted to incorporate it in the application for receivership by reference. We learn from these documents that defendant corporation was organized a number of years ago by Jacob Savageau, following the death of his brother and partner Rocke A. Savageau, as a family corporation for the purpose of continuing and operating the business of the brothers as former partners for the benefit of their respective families. That the capital stock consists of 2500 shares equally divided between the two families, one of which appears here as plaintiffs and the other as defendants in this action. It also appears that the corporation is an active, going

business concern owning considerable property, and that its corporate shares are valuable securities. It is apparent and undisputed that the two groups of stockholders being equal in amount are at odds with one another and unable to agree upon anything, the affairs of the company being directed by a board of directors comprising three of defendants and the one competent and qualified plaintiff, Mary L. Savageau; that Raymond D. Savageau is president and business manager of the affairs of the company, apparently its only salaried officer; and that plaintiffs are disgruntled because none of them is an officer of the company or draws any salary therefrom, their income being confined to dividends on their capital stock. Nowhere in the complaint or in the application for receivership is it charged that any fraud has occurred, or that the company is insolvent or in danger of insolvency, or that it is being grossly mismanaged, or that plaintiffs are not getting their fair and equal share of dividend returns accruing on their stockholdings, or that the officers of said company are committing any illegal or ultra vires acts.

It is charged by plaintiffs that defendants have usurped and seized control of the corporation; have excluded plaintiffs from management thereof; and have acted unfairly towards the plaintiffs; but these are general allegations, without discussion as to how or in what manner such were accomplished. In their briefs plaintiffs' counsel contend that the Daniels case does not apply to a "closely held corporation in which the stock interests are evenly divided and in which one group is successful in *having seized control and is oppressing the other group.*" (Emphasis supplied.) In the application for receivership it will be noted that it is alleged that the board of directors were chosen prior to any dissension or difficulty having arisen, and from this it must be assumed that members of the board of directors were originally elected at some proper meeting. It therefore is apparent that the defendant group did not seize con-

trol, but simply retained it after the dissension had occurred, because the other group could not muster sufficient strength to put them out. It also is apparent that had defendant group been bent upon seizing full control,, it could have done so more effectively by electing all four directors, which it did not do. Oppression is charged, but how can it be said that plaintiff group is being oppressed when the only qualified member thereof is one of the board of directors?

Under the circumstances we are somewhat astonished at the repeated extravagant and unseemly characterization of defendants by plaintiffs in pleadings and argument, as "usurpers" and "oppressors." It is clear from the above-mentioned allegation in plaintiffs' application that defendants did not "usurp" their positions on the board of directors, nor is it anywhere alleged how or in what manner they have oppressed defendants. It is alleged that all stockholders would reap more remuneratively, through tax savings principally, if the corporation were dissolved and its assets distributed, but that is a matter of policy rather than bad faith. It is not alleged that defendants are withholding from plaintiffs, or diverting to their own use, one dime of the profits presently being derived from the corporate business, or that shareholders of defendant group receive larger dividends or a greater proportion of company earnings than do the holders of shares in the plaintiff group. Some dissatisfaction appears concerning the remuneration received by the president, but it is not unusual for a corporation to compensate its executive officer. The amount allowed is a matter of policy, and it is not claimed that it is not borne proportionately by all shareholders, whether plaintiffs or defendants.

Suppose the court appointed a receiver, what could such receiver do about the election of the members of the board of directors satisfactory to plaintiffs? The stockholders elect the board and they would still be divided equally. All that the receiver could do would be

to take over the management and operation of the business in place of the present regular officers. By so doing he could oust the president and manager of his duties and his salary, but of necessity would doubtless draw compensation equal thereto himself. He would be obligated to take over a strange business and lose the experience of those who had conducted it for years. The only thing he could do would be to wind up the business and dissolve the corporation which is exactly the primary purpose sought by this litigation and is the only objective which would afford plaintiffs any adequate relief from their present dilemma. The case therefore comes exactly within the rule of the Daniels case, because there is no practical objective conceivable other than the dissolution of the company.

Counsel argue that the ultimate objective sought by plaintiffs is separate and distinct from the receiver, and that the two should not be considered together. This is a purely academic and wholly impractical argument because, as we have pointed out, the receivership could certainly do no good pendente lite, and might result in a great deal of harm to the defendant corporation and to all parties litigant. If dissolution is the only practical solution, and we emphasize "if," the case should proceed to determination on that point; and again, if the court should direct dissolution, there will be ample time then to appoint a receiver to carry its orders into effect.

A number of cases called to our attention by counsel for plaintiffs refer to instances where a deadlock has occurred by equal division of the board of directors of the corporation involved, whereby the business of the corporation could not be carried on. Such is not the case here. This defendant corporation is an active going concern, apparently prosperous. Among the cases called to our attention, however, is that of the *Eureka Coal Co. v. McGowan, supra,* which is cited as an illustration of a deadlock between stockholders. In that case, however, there were only two stockholders and they being in dis-

agreement were unable to elect the board of directors; hence, the corporation having no board of directors could not operate. In the instant case there is a board of directors and the corporation is operating.

 Another case, which counsel for plaintiffs insist is controlling, is that of *Burelson v. Hayutin,* 130 Colo. 58, 273 P. (2d) 124, but the facts and circumstances therein are far different from those presented in the instant case. Great pains are taken to call to our attention the similarities between the two cases, but it is the instances where they are dissimilar that clearly distinguish them. The same contention was made in the case of *Hepner v. Miller, supra,* in which the Burelson case was distinguished. We call attention to the following language appearing near the end of the second from last paragraph of the opinion in the Burelson case, to wit:

"Without a direct accusation, the entire ramification of the manipulation of the affairs of this corporation, as appears from the record in the case, is sufficiently colorful to direct suspicion * * *,. Burelson is the victim of a wrong perpetrated upon him."

We will not indulge the privilege of enlarging upon the language of the author of the opinion in that case, but will comment that, considering the facts of that case, the language to which we call attention is putting the matter mildly. The case falls squarely within the principle exception to the general rule announced in the Daniels case. In the instant case it is urged by counsel, as a last resort, that the allegations of their applications and complaint are sufficient to sustain a finding of constructive fraud. With this we do not agree and are convinced that if constructive fraud is ever sufficient to justify the appointment of a receiver in cases of this nature, it must be so clear and plain that construction can indicate nothing less than fraud, which certainly is not the situation in the present case. If fraud be relied upon, it should have been pleaded under the rules. It is too late at the tail end of a reply brief to undertake to

rely upon such a weak crutch, and results only in detracting from an otherwise good argument.

■ Lastly, it is contended that failure to hold annual meetings and regular meetings of the board of directors is violative of the laws of the state and of the charter and by-laws of the defendant corporation. Admitting that failure to hold such meetings is not conformable to the applicable statute or to the by-laws of the corporation, this in and of itself does not justify the appointment of a receiver, particularly where, under such circumstances as here presented, the holding of the stockholders' meeting would accomplish no good. Recent meetings have been held, one on November 23, 1953, shortly before the commencement of this action, where absolutely nothing could be accomplished because of the dissension and deadlock between the parties. This does not say that the officers and present board of directors of the corporation are illegal, as it is their duty under the law to continue to hold their offices and to manage and conduct the affairs of the corporation as trustees for the benefit of the stockholders until their successors are duly elected and qualified. This duty the present board of directors and officers, with the possible exception of Mary L. Savageau, have performed.

Having reviewed this record diligently, and having studied carefully the arguments of respective counsel, we find ourselves in agreement with the findings and conclusions of the trial court, and its judgment dismissing the application for appointment of a receiver is affirmed.