ALFRED J. DUTCH

PERCY H. DUTCH

*vs.*

RUSSELL O. SCRIBNER

Waldo. Opinion, December 14, 1955.

*McLean, Southard & Hunt,*
*Clyde L. Chapman,* for plaintiff.

*Edward A. Weatherbee,*
*John H. Needham,* for defendant.

SITTING: FELLOWS, C. J., WEBBER, BELIVEAU, TAPLEY, JJ.
WILLIAMSON, J., and CLARKE, J., did not sit.

BELIVEAU, J.   On appeal, by plaintiffs, from the decree of
a single justice sitting in equity.

It is an oft repeated rule of law that the plaintiffs cannot
succeed on their appeal unless they satisfy the court that
the ruling and findings of the justice below were "clearly
wrong." We are of the opinion that the findings were not
wrong, clearly or otherwise.

This is a bill brought by the plaintiffs against the de-
fendant, executor of the estate of Myra T. Dutch and sole
beneficiary under her will dated May 26, 1944. The bill
seeks to compel this beneficiary to execute to the plaintiffs
a deed of the real estate devised to Myra T. Dutch by Altana
E. Dutch, her husband, in his will dated July 20, 1939 and
to charge this defendant, as trustee, with the value of the
personal property in the amount of $6,270.66, which the
widow took under that will.

By the terms of the Altana E. Dutch will,

> *"THIRD:* I give, devise and bequeath all the rest,
> residue and remainder of my estate, real, personal
> and mixed, wherever found and however situated,
> to my wife Myra T. Dutch, to have and to hold dur-
> ing the term of her natural life and at her decease

"I give, devise and bequeath whatever remains of my said estate to my sons Alfred J. Dutch and Percy H. Dutch in equal shares."

Altana E. Dutch died March 8, 1944 and the wife, Myra, on the 31st day of January 1953.

On June 30, 1944 the plaintiffs executed a quitclaim deed of their interest in the real estate acquired by them under the Altana E. Dutch will, to their stepmother, Myra T. Dutch.

The plaintiffs allege this quitclaim deed was executed because of a promise made by Myra that she would will the real estate to them, and, to void this conveyance, paragraph 8 of the plaintiffs' bill alleges that Myra "in violation of her said agreement and in fraud of the rights of the plaintiffs made and executed the will and testament set forth in paragraph 7 hereof as Exhibit C, whereby legal title to said real estate described in paragraph number 3 hereof descended in fraud of the rights of the plaintiffs into the possession and control of the defendant, Russell O. Scribner."

The plaintiffs had the burden of showing such a promise as they allege, or the perpetration of a fraud by Myra. The evidence for the plaintiffs is that sometime prior to the execution of the quitclaim deed to Myra, June 30, 1944, Myra while out with Alfred J. Dutch in his automobile, as a guest, is alleged to have made the promise on which the plaintiffs rely. That testimony is given by Alfred, Maude his wife, and Dryden, their son. This was nearly 9 years before Myra died and while the evidence shows that the close friendship, which had existed for a good many years, continued and they saw each other frequently, no mention was again made of the alleged promise.

It would seem that if what the plaintiffs claim had really occurred, Alfred's interest would have caused him, during

the nine-year period, to inquire or ascertain if Myra had fulfilled or complied with the alleged promise. Alfred was called to the office of Attorney Morse prior to the execution of the quitclaim deed and there they discussed Myra's desire to have full title to the real estate and, after that discussion, Alfred agreed to comply with her wishes, if Percy, in California, would join him. Mr. Morse testified that no mention was made, or discussion had, of the alleged promise by Myra and in this he is corroborated by Alfred who testified that this phase of the case was not discussed with Mr. Morse at any time.

Plaintiffs' Exhibit No. 2 is a letter from Mr. Morse to Percy H. Dutch of San Bernardino, California, in which Mr. Morse set out the reasons why Myra felt she should have full title to the real estate and informed Percy that Alfred would be willing to join in such a conveyance.

The answer from Percy Dutch as shown by Exhibit 1, dated June 30, 1944, states that he would release his interest in the home place as requested. No mention is made by Percy, in his letter to Mr. Morse, of any promise by Myra to will the real estate to the plaintiffs.

In view of this evidence and the conduct of the plaintiffs for a period of almost 9 years the justice below concluded, as he should, that no such promise as claimed was ever made.

Logic and common sense argue loudly against the claim of the plaintiffs. If their position is true, then the giving of the deed to Myra and a will by her leaving the real estate to them would not in any sense have changed the situation which was created by Altana E. Dutch in his will. While she would enjoy absolute title during her lifetime she in fact would have a life estate and the plaintiffs would take that real estate at her death. This is exactly the situation provided in Altana's will.

The plaintiffs' bill alleges that Myra in taking the deed from the plaintiffs violated a confidential relation which existed between her and the two sons because she was the father's widow and their stepmother.

We are not aware of any law which creates such relationship.

As stated in our court in *Mallett* v. *Hall*, 129 Me. at page 154, relation of life tenant and remainderman does not create a confidential relation and, if such existed, it is a fact to be established by the party claiming that relationship.

The plaintiffs had failed to comply with the rule laid down in *Brickley* v. *Leonard*, 129 Me. 94, that evidence of the promise or contract, which the plaintiffs claim, "must be conclusive, definite and certain, and the contract must be established beyond all reasonable doubt."

While the plaintiffs allege fraud on the part of Myra there is no evidence in the case to show any fraud was practised or perpetrated by her on either or both of the plaintiffs.

Fraud cannot be presumed, "proof of the fraud must be full, clear and decisive, and relief will not be granted where the evidence is loose, equivocal and contradictory, or in its texture, open to doubt or opposing presumptions. This rule is especially enforced where the oral evidence comes mainly from the parties of the suit." *Morris Plan Bank* v. *Winckler*, 127 Me. 311.

The plaintiffs seek to charge the defendant as trustee for the personal property listed in the inventory of the husband's estate and which admittedly came into the hands of Myra. The defendant is in this court as a beneficiary of Myra's will and not as her executor.

While these proceedings were pending the defendant, by motion, petitioned the court that he be allowed to intervene in his capacity as executor. This motion was denied.

The defendant, as an individual, has come into the possession of no part of the goods, chattels and personal property as Myra's beneficiary. His position is that of executor and as such has only that control over it which the law gives him and is subject to Myra's liabilities.

It appears the plaintiffs have filed in the Probate Court a claim against Myra's estate for the value of personal property listed in the inventory of their father's estate and that commissioners have been appointed to determine what, if anything, is due.

If the plaintiffs are successful in that direction then, of course, such an amount as is found due must be paid by the executor out of the personal property, if sufficient, together with other liabilities, if any. No transfer of this property from the defendant as executor to himself as beneficiary can occur until the estate has been finally settled and an order of distribution made by the Probate Court having jurisdiction.

*Appeal dismissed.*

*Decree below affirmed with costs.*