Lawrence G. LASKEY and Maxwell A. Finn

v.

**L. & L. MANCHESTER DRIVE-IN, INC.**

Lawrence G. LASKEY and Maxwell A. Finn

v.

**L. & L. BREWER DRIVE-IN, INC.**

Supreme Judicial Court of Maine.

Jan. 19, 1966.

Brann & Isaacson, by Irving Isaacson, Lewiston, for plaintiffs.

Marshall, Raymond & Beliveau, by Laurier T. Raymond, Jr., Lewiston, for defendants.

Before WILLIAMSON, C. J., and TAPLEY, MARDEN, RUDMAN and DUFRESNE, JJ.

MARDEN, Justice.

On appeal from decree of a single Justice ordering dissolution and appointment of a Receiver for each of the defendant corporations. The petitions and issues being identical in substance, they were, by agreement, consolidated for hearing and were treated then and now as one case.

Here is involved the application of 13 M.R.S.A. § 542 which provides:

"*1. Judgment of dissolution.* The Superior Court may, if equity so requires, enter judgment dissolving a corporation:

\*　\*　\*　\*　\*　\*

"*B*. Whenever it is made to appear in a civil action brought by any stockholder of a corporation organized under the general laws and having no more than 10 stockholders that, notwithstanding the fact that the corporation is solvent or earning profits in the conduct of its business,

"*(1)* The voting stock is evenly divided into 2 independent ownerships, interests or factions, and the number of directors is even and equally divided respecting the management of the corporation with ½ of the stock favoring the course advocated by ½ of the directors and the other ½ of the stock favoring the course of the other ½ of the directors, or

\*　\*　\*　\*　\*　\*

"*(3)* The corporation is otherwise deadlocked in its management."

It was stipulated at pre-trial conference that the ownership of the stock entitled to be voted is equally divided between the plaintiffs and one Loew;[1] that each cor-

---

1. The pleadings admit that the total issued and outstanding capital stock of the corporation consists of 50 shares of Class A Common Stock owned by Elias M. Loew and 50 shares of Class B Common Stock, 25 shares of which are owned by plaintiff Laskey, and 25 shares of which are owned by plaintiff Finn.

Pursuant to the By-Laws of the defendant corporation, the Class A Directors are elected annually by vote of a majority of the holders of the Class A Common Stock, and the Class B Directors are elected annually by vote of a majority of the holders of the Class B Common Stock. The President must be a Class B Director and the Treasurer must be a Class A stockholder. Three-fourths of the Directors at the time in office shall constitute a quorum for the purpose of any meeting of the Directors, and the affirmative vote of three-fourths of all the Directors shall be required to transact business at any meeting of the Directors.

Article III, Paragraph I of the By-Laws provides:

"The Directors may exercise all the powers of the corporation except such as are required by law or by the Agreement of Association or By-Laws to be otherwise exercised, and shall have the general direction, control and management of the property and business of the corporation. All property of the corporation, which shall be in the custody of the Board of Directors, shall be subject at all times to inspection by the President or the Treasurer. Unless otherwise provided by law, the Directors shall have power to purchase and to lease, pledge, mortgage and sell such property (including the stock of this corporation), and to make such contracts and agreements as they deem advantageous, to fix the price to be paid for or in connection with any property or rights purchased, sold or otherwise dealt with by the corporation, to borrow money, issue bonds, notes and other obligations of the corporation, and to secure the payment thereof by the mortgage or pledge of all or any part of the property of the corporation. They may determine their own compensation, and the compensation and duties, in addition to those prescribed by the By-Laws, of all officers, agents and employees of the corporation."

The Board of Directors of the defendant corporation consists of four (4) Directors, of which there are two (2) Class A Directors, Elias M. Loew and Esther Pinkus, who were elected by Elias M. Loew, the holder of all of the Class A Common Stock of the corporation, and two (2) Class B Directors, the Plaintiffs Laskey and Finn, who were elected by the Plaintiffs Laskey and Finn, the holders of all of the Class B Common Stock of the corporation. In addition, the said Laskey is the President,

poration has fewer than 10 stockholders and that each corporation is solvent and earning profits. That the corporation was organized under the general laws is not questioned.

It was stipulated that "(t)he sole issue in dispute to be determined after hearing in each case 'are the Directors equally divided with respect to the management of the corporation?' "

In joinder of the issue the defendant denies the existence of a deadlock in the corporate management within the meaning of the statute and contends that, if such deadlock be found, it has been accomplished by a split of votes created by plaintiff for the sole purpose of basing their complaint thereon, and that such split of votes does not represent an equal division respecting the management of the corporation within the meaning of the statute.

The evidence submitted consisted of the stenographically recorded minutes of a Special Meeting in lieu of the Annual Meeting of Stockholders of the defendant corporation, at which all of the stockholders were present in person and voting, and similarly recorded minutes of a Special Meeting of the Board of Directors of the defendant corporation, at which meeting all of the Directors were present in person and voting.

Upon this evidence the reference decision was founded and subjected to appeal.

The Points of Appeal are:

"1. The Court erred in ruling that upon the evidence presented by the Plaintiffs, equity requires that the Defendant corporations should be dissolved.

"2. The Court erred in ruling that the Plaintiffs satisfied their burden as to (a) the jurisdiction facts required by 13 M.R.S., Section 542, and (b) the necessity of equitable relief.

"3. The evidence is insufficient to sustain the findings of the Court."

■ The statute under consideration was designed to give relief from situations created by dissension and deadlock peculiar to closely held corporations[2] and, briefly paraphrased, it permits the court "if equity so requires" to dissolve a corporation whenever the directorate is equally divided respecting the management of the corporation and the voting stock is evenly divided into two factions respectively supporting the split directorate *or* the corporation is otherwise deadlocked in its management. It is a case of first impression in Maine. While other States have statutes with similar purpose, and which are discussed in the articles cited in footnote 2, the decisions in those States are of limited aid to us because of provisions peculiar to those jurisdictions.[3] While these statutes are alike in principle as to the jurisdictional facts by which ac-

and the said Finn is the Assistant Treasurer of the corporation.

2. Discussions of these problems and statutory remedies are found in "Close Corporations" O'Neal, Chapter IX § 9.01, § 9.03, and § 9.29; "The Sacred Cow of Corporate Existence, Problems of Deadlock and Dissolution" Vol. 19 University of Chicago Law Review, Page 778 (1951–1952); "Recent Legislation Affecting Close Corporations" 23 Law And Contemporary Problems, Pages 341, 352 (1958); "Madame Wagner And The Close Corporation," Comment in 73 Harvard Law Review 1532, (1959–1960).

See also American Law Institute, Model Act § 90, Annot. "Dissolution of corporation on ground of intracorporate dead-

lock or dissension" 13 A.L.R.2d 1260 et seq., Supplemental Annot. 2 A.L.R.2d Later Case Service 75.

3. Illustrative cases: Strong v. Fromm Laboratories, 273 Wis. 159, 77 N.W.2d 389 (1956); Petition of Collins-Doan Co., 3 N.J. 382, 70 A.2d 159, 13 A.L.R. 2d 1250 (1949); In re Seamerlin Operating Co., 307 N.Y. 407, 121 N.E.2d 392 (1954); Handlan v. Handlan, 360 Mo. 1150, 232 S.W.2d 944 (1950); Jackson v. Nicolai-Neppach Co., 219 Or. 560, 348 P.2d 9 (1959); Krall v. Krall, 141 Conn. 325, 106 A.2d 165 (1954); In re Radom & Neidorff, Inc., 307 N.Y. 1, 119 N.E.2d 563 (1954); and Gidwitz v. Lanzit Corrugated Box Co., 20 Ill.2d 208, 170 N.E.2d 131 (1960).

cess to the Court is gained, commonly there are provisions requiring the exercise of judicial discretion and therein the real controversies arise. Benefit to stockholders, *Seamerlin; Radom;* irreparable injury to corporation, *Handlan; Jackson;* good and sufficient reason, *Krall;* acts of those in control oppressive, *Gidwitz,* are examples. In our statute the phrase "if equity so requires" is a distinguishing feature.

 Upon this appeal from the finding of a single Justice, findings of fact by the Justice below will be conclusive if supported by credible evidence, Flagg v. Davis et al., 147 Me. 71, 74, 83 A.2d 319, and the burden is upon the Appellant to satisfy this court that the rulings and findings of the Justice below were clearly wrong, Dutch v. Scribner, 151 Me. 354, 118 A.2d 887.

The Appellant urges that assuming, without admitting, that the records of the meetings, the stipulations and the pleadings establish facts which, under the statute, give the court jurisdiction to entertain the complaint, such evidence alone is insufficient to establish entitlement to remedial dissolution.

By the terms of the pre-trial order the only issue of fact, is whether the Directors are equally divided with respect to the management of the corporation. It is implicit that there is a mixed question of fact and law on the "equities." The record supports amply a conclusion that this jurisdictional fact is present. Classifying the division of the Directors for convenience as faction A and faction B, the plaintiff faction A offered a series of propositions with relation to corporate business for the consideration of the Board of Directors, on none of which could action be taken by reason of equal division of the Board. These matters were:

(1) Designation of a co-signer for the deposit and disbursement of corporate funds.

(2) Employment of an accountant.

(3) Termination of an existing relationship with a stated theatre management company.

(4) The employment of another company or individual to handle theatre operations.

(5) Change in the source of theatre concession supplies, and

(6) The establishment of salaries of officers and employees for the current year.

The record implies that by virtue of management decisions, before dissension among the Directors arose, contracts had been made with a theatre management company in which faction B had, and continues to have, a financial interest and from which financial benefit to faction B continues to inure. The record does not disclose upon what contractual basis the relationship between the defendant corporation and the management company stands, but in any event, the deadlock prevents a review or renegotiation of this relationship. By this deadlock the benefitted faction B remains in a position to perpetuate its benefits and the opposing faction is powerless to be effectively heard on the matter.

The corporate arrangement for the purchase of theatre concession supplies would appear to be similarly frozen and as long as the vendor is content to accept the authority of faction B in control of the status quo, the opposing faction is similiarly impotent. In both instances the investment of faction A has no audible voice.

 It must be conceded that one of the primary functions of management is to fix the compensation of officers and employees (By-Laws quoted in footnote 1), which of necessity must be reviewed periodically, in the light of changing business conditions and economic atmosphere, and a stalemate in this area is persuasive evidence that the corporate balance wheel is on dead center, that there is no movement of the corporate machinery in this respect

and the result is, as expressed by the single Justice, corporate paralysis.

A study of the record discloses such acrimony between the factions that there is loss of communication and no signs of reconcilability.

■ Appellant also urges that the "deadlock," if found, arises only by reason of propositions advanced by faction A with an ulterior purpose to thereby manufacture a stalemate and, if not so promoted, the resulting tie vote is on trivia such as inability to decide upon the color of the rug in the Board room. Obliquely we reply that the issue is the establishment of equities, in the determination of which the nature of proposals advanced is a consideration. Whether the proposals be deliberate and only to demonstrate a deadlock or have to do with matters inconsequential to vital corporate administration is for the court to determine, and unless clearly wrong, the findings of the single Justice stand.

■ Appellant urges, the single Justice agreed and we agree, that statutory dissolution is authorized only when a) facts which the statute has prescribed are established to enable the court to entertain the complaint, and b) "something more" to establish that equitable considerations justify dissolution. The single Justice and we do not agree with appellants that the proof establishing so-called jurisdictional facts may not also, at times, supply proof of the necessary "something more",—that equity requires a grant of the statutory remedy.

What is the test by which the presence of a requiring equity is determined? It is not possible to express a neat definition.

The characteristic flexibility of equity to meet the demands to which it by its nature, is exposed has seen the early conception of equity as being only the application of the "King's conscience" markedly changed over the intervening years.[4]

In recognition of the development of equity and its meaning it was said as early as 1844 in Savings Institution v. Makin, 23 Me. 360, 366 that:

"Equity is not (alone) the chancellor's sense of moral right, or his sense of what is just and equal. It is a complex system of established law."

In Miller v. Kenniston, 86 Me. 550, 551, 30 A. 114, it was said:

"The term 'equity', in English and American law, is derived from the Roman 'equitas,' and in the long history of equity jurisprudence, * * * its original meaning has never been obscure. The maxim, 'Equality is equity,' has long been familiar as a potent principle, and has lost none of its force.

"Equity jurisdiction is often and repeatedly exercised to secure equality, * * *."

■ The equity jurisdiction of our court is "according to the usage and practice of courts of equity, in * * * cases where there is not a plain, adequate and complete remedy at law." 14 M.R.S.A. § 6051, subd. 13. We hold that the phrase in the statute under consideration, "if equity so requires," means and is to be applied as if the statute read "the Superior Court may, according to the usage and practice of courts of equity, enter judgment dissolving a corpora-

4. See "The Nature of Equity" §§ 43–67, Pomeroy's Equity Jurisprudence, Fifth Edition; Story's Equity Jurisprudence, 14th Edition §§ 1–37; Lawrence on Equity Jurisprudence §§ 1–55; White-house Equity Practice §§ 1–12; "State or quality of being equal or fair; fairness in dealing" Lamborn & Co. v. United States, 65 F.Supp. 569, [4] 576, 106 Ct. Cl. 703, where statute allowed such damages "as equity and justice shall require"; "judicial discretion which may be likened to the civil conscience," Cox v. Burgess, 139 Ky. 699, 96 S.W. 577, 579; "natural right or justice," In re New Jersey State Bar Ass'n, 111 N.J.Eq. 234, 162 A. 99, 101; Mutual Life Ins. Co. of New York v. Blair et al., C.C., 130 F. 971.

tion * * *", if the facts in the light of sound judicial discretion justify it.

No case has been called to our attention nor have we found any where the "something else," in addition to necessary jurisdictional facts, is phrased as in our statute.

In Krall v. Krall, 141 Conn. 325, 106 A.2d 165 the "something else" was the existence of "any good and sufficient reason" and the court interpreted it to mean as a good and sufficient reason such as recognized on general equity principles. [4] at 168. In both Colorado in 1922 and Kansas in 1923, neither of which States had a "deadlock" statute, receivers were appointed in corporate deadlock situations. A statute in Colorado authorized the appointment of a receiver in such cases "as are in accordance with the practice of courts of equity jurisdiction," which appointment was upheld as "peculiarly proper" where only through a receiver could the interests of both factions be protected. Eureka Coal Co. v. McGowan, 72 Colo. 402, 212 P. 521. As late as 1955 Eureka was accepted as valid upon its facts. Savageau v. J. & R. A. Savageau Inc., 132 Colo. 75, 285 P.2d 810 [5], 815. In Kansas a statute authorized the appointment of a receiver in cases "where receivers have heretofore been appointed by the usages of the courts of equity" and the court stated that "'by the usages of courts of equity,' means according to the informing spirit of equity heretofore manifested in the appointment of receivers." Bowen v. Bowen-Romer Flour Mills Corporation, 114 Kan. 95, 217 P. 301, 43 A.L.R. 238. This case was approved in principle in 1962 in Jacobson-Lyons Stone Company v. Silverdale Cut Stone Company, 189 Kan. 511, 370 P.2d 68, [13] 77.

A statute phrased similar to ours is found in the English Companies (Consolidation) Act, 1908 (8 Edw. 7, c. 69) applied in In re Yenidje Tobacco Company, Limited (1916) 2 Ch. 426 (C.A.) which provided:

"129. A company may be wound up by the Court—

* * * * * *

"(vi) if the court is of opinion that it is just and equitable that the company should be wound up."

In *Yenidje* a deadlock arose, arbitration provided in the charter failed, there was no communication between the 2 factions, and a petition to "wind up" was filed. Lord Cozens-Hardy M.R. who, with one other, spoke for the Court of Appeal, affirmed the order to "wind up" and analogized the situation to that of a partnership where irreconcilability and loss of hope of friendly cooperation had been held to justify the solution. The court says (page 432):

"It is a private company, and there is no way to put an end to the state of things which now exists except by means of a compulsory order. It has been urged upon us that, although it is admitted that the 'just and equitable' clause is not to be limited to cases ejusdem generis, it has nevertheless been held, according to the authorities, not to apply except where the substratum of the company has gone or where there is a complete deadlock. * * *, but I should be very sorry, * * *, to hold that they are strictly the limits of the 'just and equitable' clause as found in the Companies Act. * * *"

Lord Justice Warrington (page 435) concurs, stating that:

"* * * where there are no means of overruling by the action of a general meeting of shareholders the trouble which is occasioned by the quarrels of the two directors and shareholders, * * *. * * * it is just and equitable that the company should be wound up."

 One of the cardinal principles of equity practice is the recognition of equal rights and protection of such equality. *Miller,* supra. The single Justice recognized

the presence of equal rights and extended them the statutory protection. We concede that granting the statutory dissolution is an astringent remedy not to be applied with "uncircumscribed discretion" *(Krall,* supra, [4] 106 A.2d page 168 and other cases cited) but we discover no error in the conclusions of the single Justice that the evidence not only established the facts required by the statute to enable the court to entertain the complaint, but went sufficiently beyond those jurisdictional facts to satisfy him that equity required a judgment of dissolution. This conclusion is, without question, supported by the evidence and not only not "clearly wrong" but clearly right.

Appeal dismissed.

WEBBER, J., did not sit.