482 P.2d 421 (1971)
Dr. G. Phillip HART, Jr., and Nell Hearn Hart, Plaintiffs in Error,
v.
ED-LEY CORP., a corporation, Gladys M. Edwards, Jack Braden, Market Exchange, Inc., a corporation, Midland Federal Savings and Loan Association, a corporation, Guy P. Colantino, as Receiver, and Commercial Industrial Bank, a corporation, Defendants in Error.
No. 70-373. (Supreme Court No. 23340.)
Colorado Court of Appeals, Div. I.
January 26, 1971.
Rehearing Denied February 23, 1971.
*422 C. J. Berardini, Denver, for plaintiffs in error.
S. T. Anderson, Denver, for defendants in error, Ed-Ley Corp., Gladys M. Edwards, Jack Braden, and Market Exchange, Inc.
Fairfield & Woods, Charles E. Matheson, Denver, for defendant in error, Midland Federal Savings and Loan Assn.
C. Hamilton Evans, Denver, for defendants in error, Guy P. Colantino, as Receiver, and Commercial Industrial Bank.
Not Selected for Official Publication.
COYTE, Judge.
This case was originally filed in the Supreme Court of the State of Colorado and subsequently transferred to the Court of Appeals under authority vested in the Supreme Court.
The parties make their appearance here in the same order as they appeared at trial and shall be referred to in the same manner or by name.
Plaintiffs contracted to exchange property with defendant Ed-Ley Corp. The motel which plaintiffs were to receive in the exchange was located in Denver, Colorado, and had an agreed value of $250,000. The owner and seller of the motel was the defendant Ed-Ley Corp. of which the defendant Gladys Edwards was president. The defendant Jack Braden was the real estate agent who handled this exchange, and the defendant Market Exchange, Inc., was the listing agency and the party that employed Braden. Suit was brought against these defendants in January 1967 for damages allegedly sustained as a result of fraudulent misrepresentation as to the motel's earning capacity, or in the alternative for rescission of the contract.
The defendants, Midland Federal Savings and Loan, hereafter referred to as "Midland," and Commercial Industrial Bank, hereinafter referred to as "Commercial," were the respective holders of the first and second deeds of trust on the property. The defendant Guy P. Colantino was the payee of the second deed of trust, which he had assigned to the defendant Commercial. Plaintiff sought a restraining order prohibiting the latter three defendants from commencing foreclosure proceedings pending the outcome of the claim for damages or rescission against the other defendants.
In June 1967 the defendant Colantino, at plaintiffs' request, was appointed receiver of the motel property and functioned as such until December 1967. Plaintiffs' request for an order restraining the defendants Midland and Commercial from commencing foreclosure proceedings on their deeds of trust was denied.
Prior to the trial, the judge ordered the plaintiffs to elect their remedy, and they chose damages. Thereafter, in August 1967, trial was to the court, which granted defendants' motion to dismiss at the close of plaintiffs' evidence
In December 1967 the court entered an order discharging the receiver. By the terms of this order, the court ordered the *423 receiver to distribute $10,030.21 in his possession as follows: (1) $750 as receiver's fees; (2) $3,415.74 for the April and May of 1967 payment on the deed of trust held by Midland; (3) $532.06 for attorney's fees; (4) $4,614.75 to the defendant Colantino for reimbursement of sums paid to Midland for the January, February, and March 1967 payments on the deed of trust; and (5) $717.66 to Commercial for the arrearage on the second deed of trust.
Plaintiffs appeal, asserting various items of error were committed by the trial court below.

I.
The first contention concerns the findings made by the trial court. To understand this alleged error it is necessary to explain the specific allegations of fraud made by the plaintiffs.
The negotiations concerning the sale of this motel took place in August 1966. According to plaintiff, Dr. Hart, he discussed the exchange with the defendant Braden, emphasizing that he wished to purchase income-producing property.
A financial statement prepared by an accountant for the information of the defendant Gladys Edwards, was submitted to the plaintiff, Dr. Hart, upon his request. Dr. Hart gave this financial statement to his accountant to look over before the purchase.
This particular statement had a column listing the income and expenses for the month of August 1966 and a parallel column purporting to list the accrual of income and expenses for the year to date. The total gross income for August was listed as $10,085 and for the year to date as $50,095.66. Under the various expenses, interest for August was listed as $1,019.66, and for the year to date as $12,505.98. Insurance was listed as zero for August and $254.67 for the year to date. Taxes (meaning property taxes) were listed as being zero for August and $442.93 for the year to date. These expenses, totaled with the others and subtracted from the gross income, gave a net profit for the year to date as $4,614.38.
According to the plaintiff, however, the correct figures for the year should have been $1,015.22 for insurance, $13,184.60 for interest and $3,578.01 for taxes. This was a net discrepancy of $4,574.25, meaning that the net income was only $40.14 instead of the $4,614.38 shown. Apparently plaintiffs' figures were correct for we note that these figures were used in the closing statement dated October of 1966.
The trial court held that even though the financial statement was false, it was not an actionable case of fraud since the financial statement was not known to be false by the defendant Gladys Edwards when it was submitted to Dr. Hart; and since, in order to prove fraud, it must be established that the seller had knowledge that the representation made is in fact false, Morrison v. Goodspeed, 100 Colo. 470, 68 P.2d 458. The court concluded that there was a failure of proof on the part of plaintiffs and dismissed this suit.
We are in agreement with plaintiffs' argument that Gladys Edwards had actual knowledge that these figures were false. The evidence is clear that the true figures were in possession of the corporation, i.e., contained within its records, but were incorrectly stated in the financial statement.
In brief, fraud requires the seller to misrepresent or conceal a material fact from the purchaser in a deliberate or reckless manner, with the intent that the purchaser rely upon this misrepresentation. The purchaser must be in ignorance of this material fact, and act in justifiable reliance upon this misrepresentation to his detriment. Knight v. Cantrell, 154 Colo. 396, 390 P.2d 948; Morrison v. Goodspeed, supra. In order to prove fraud, it is necessary to establish the presence of all the elements by clear and convincing proof. Greathouse v. Jones, 167 Colo. 406, 447 P. 2d 985.
The facts and circumstances surrounding this transaction simply would not support such a finding. In particular, we *424 note from Dr. Hart's testimony that he had dealt in real estate for investment purposes for fifteen years preceding this transaction. Before this purchase, he had consulted both an accountant and an attorney. The evidence reveals Dr. Hart is a man knowledgeable and well informed concerning real estate transactions. It also shows that the business records of the motel were readily available for Dr. Hart's inspection, but that he voluntarily elected to use the financial statement prepared by the corporation for the use of defendant Gladys Edwards. The most glaring discrepancy in this financial statement appears to be the figure for property taxes, listed as $442.93, but listed in the closing statement as $3,736.79. The true figures as to taxes, interest and insurance were shown on the closing sheet, were known at the time of closing, were received by plaintiffs' lawyer and accountant and no objection was voiced at the closing. According to Dr. Hart's testimony, he, as a person with a better than average knowledge of real estate investments, relied upon this assertion that a $250,000 motel located in Denver, Colorado, had but $442.93 in property tax assessed against it.
For a man of Dr. Hart's position and knowledge, this incredibly inaccurate tax figure should have been sufficient notice to cause suspicion to arise as to the accuracy of the entire statement. Notice of a fact which would cause a reasonably prudent man under similar circumstances to investigate, is considered sufficient notice of all those facts which the investigation might have uncovered. Cherrington v. Woods, 132 Colo. 500, 290 P.2d 226.
We also note that the plaintiffs had full and ample opportunity to make their own independent investigation. The defendants did not attempt to dissuade them from doing so by this statement, since it was not prepared originally for plaintiffs' use, and was only submitted to plaintiffs upon their request. There was, in short, no intentional deception practiced by the defendants in this case. Under these circumstances where plaintiff has full opportunity to investigate but elects not to do so, he cannot complain of fraud by reason of inadvertent false statements made to him by the seller. As was pointed out in Troutman v. Stiles, 87 Colo. 597, 290 P. 281:
"If a purchaser of lands does not avail himself of the means and opportunities which are afforded him for acquainting himself with the character and value of the land, he will not be heard to say that he has been deceived by vendor's representations."
See also Hayden v. Perry, 110 Colo. 347, 134 P.2d 212, wherein is stated the general proposition that, absent misconduct on the part of the seller, a buyer cannot complain of fraud if he has full opportunities to conduct his own investigation.
In the present case we hold the plaintiffs failed to sustain their burden of establishing fraud on the part of the defendants, and therefore conclude the trial court was correct in dismissing their claim even though it did so for the wrong reason.

II.
Plaintiffs' next allegation deals with the trial court's refusal to grant their motion for a jury trial. The reason given by the court was that plaintiffs had failed to comply with Local Rule 17 requiring payment of jury fees to the clerk of the court ten days after the trial date had been set.
The court did not commit error in refusing to grant plaintiffs' motion for a jury trial. Denver District Court Local Rule 17 specifically provides that:
"Failure to pay the jury fee within the time prescribed shall render the demand for a jury trial null and void. * * *"
Plaintiffs' failure to tender payment within the prescribed time rendered their demands null and void automatically. This rule was regularly adopted by the judges of the district court and approved by the supreme court. The trial court's enforcement of this rule did not constitute reversible error. In any event, this issue becomes moot since plaintiffs' case was properly *425 dismissed as a matter of law at the close of their evidence for failure to sustain their burden of proof.

III.
The third point of alleged error deals with the trial court's order of December 1967. In particular, plaintiffs assert that by ordering the receiver to disperse funds to Midland and Commercial for payment on the January through May installments due on the deeds of trust held by them, the court was in error.
The facts show that the installments on these deeds of trust were in arrears for January through May of 1967, or until the receiver was appointed in June 1967. After this date the receiver apparently paid these past due installments out of his own pocket, and was reimbursed by the court in its order of December 1967.
Plaintiffs urged that until a mortgagee or holder of a deed of trust takes affirmative steps to foreclose on the property, it is not entitled to the income from that property. Megginson v. Hall, 111 Colo. 104, 137 P.2d 411. Therefore, according to plaintiffs, Midland and Commercial were not entitled to any of the rents or income derived from the property prior to the appointment of the receiver in June 1967.
Plaintiffs overlook the fact, however, that in this case the payments to Midland and Commercial for the installments due in January through May 1967, did not come from the income generated by the motel during these months, but came from the income collected by the receiver after his appointment, not before.
A receiver, once appointed, is an officer of the court, responsible for the property in his charge. Even if his appointment resulted from the request of one of the parties, his responsibility is to the court to carry out the duties conferred upon him by that court. Marker v. City Savings Building and Loan Association, 101 Colo. 302, 73 P.2d 991; Hendrie & Bolthoff Manufacturing Co. v. Parry, 37 Colo. 359, 86 P. 113. As its first responsibility the court having taken possession of the property must preserve it for the litigants. Colorado Wool Marketing Ass'n v. Monaghan, 66 F. 2d 313.
The receiver's function is to collect the assets, obey the court's order and in general to maintain and protect the property and the rights of the various parties. Savageau v. J. & R. A. Savageau, Inc., 132 Colo. 75, 285 P.2d 810. The receiver here took charge of the property in June 1967, and paid those past due installments on the two deeds of trust from his own resources and was reimbursed by the court from the fund generated by the motel's operation after the receiver's appointment.
By the court's order, the threat to plaintiffs' title to this motel through foreclosure was removed. Plaintiffs argue that foreclosure did occur later and therefore they did not benefit by this order. This is irrelevant, however, since the trial court was not gifted with prophetic ability. At the time made, this order removed the threat to plaintiffs' title, and therefore is clearly in accord with the requirement of the court and receiver to protect and maintain the rights of the various litigants to the property. The order appointing the receiver provided that no delinquent payments could be made without application to and approval of the court. The court had discretion in ordering application of funds collected by the receiver. Steinberg v. Goldstein, 129 Cal.App.2d 682, 278 P.2d 22. The validity of the encumbrances was not questioned. We approve the court's order distributing funds collected by the receiver during the period of time he was acting as receiver.

IV.
The final assignment of error deals with the payment of attorney's fees to the receiver. Plaintiffs state that the services of an attorney were unnecessary in this case, and therefore it was error for the trial court to order payment of these fees.
Unless there is shown to have been abuse of discretion on the part of the trial *426 court in awarding attorney's fees to the receiver, the appellate court shall not upset the fee upon review. Welch v. Renshaw, 14 Colo.App. 526, 59 P. 967. Based upon competent and sufficient evidence, the trial court determined that the use of an attorney was called for in this case, and we will not upset the finding made below on this issue. We also find the evidence sufficient to support a finding of the reasonableness of the cost as incurred.
Judgment affirmed.
DWYER and DUFFORD, JJ., concur.